IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| EDWARD DOMES, | ) | Civil Action No. 05-457 |
|  | ) |  |
| Petitioner | ) | Judge Gary L. Lancaster/ |
|  | ) | Magistrate Judge Lisa |
| vs. | ) | Pupo Lenihan |
|  | ) |  |
| SUPERINTENDENT WAKEFIELD, PA. | ) |  |
| ATTORNEY GENERAL, and THE DISTRICT | ) |  |
| ATTORNEY OF ALLEGHENY COUNTY, | ) |  |
|  | ) |  |
| Respondents | ) |  |
|  | ) |  |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.  RECOMMENDATION**

It is respectfully recommended that the habeas corpus petition, filed pursuant to 28 U.S.C. § 2254, be dismissed and that a certificate of appealability be denied.

**II.  REPORT**

Edward Domes ("Petitioner"), is a State prisoner, who is serving a life sentence for a first degree murder conviction.  He now seeks federal habeas relief.  In his habeas petition, he raises the following issues:

SHOULD A FEDERAL EVIDENTIARY HEARING BE HELD ON
COUNSEL'S INEFFECTIVE ASSISTANCE VIA COUNSEL'S FAILURE
TO INFORM PETITIONER OF A PRETRIAL OFFER FOR A PLEA OF
THIRD DEGREE MURDER?
[Doc. 3 at 3]

WAS PETITIONER DENIED DUE PROCESS OF LAW BY THE STATE
COURT WHEN THEY FAILED TO PERMIT AN EXPERT TO TESTIFY
TO SUPPORT AN INVOLUNTARY INTOXIFICATION DEFENSE?
[Id. at 5]

SHOULD TRIAL COUNSEL BE RENDERED [sic] TO HAVE PROVIDED

INEFFECTIVE ASSISTANCE FOR REMARKS GIVEN IN THE CLOSING
THAT REMOVED THE PRESUMPTION OF INNOCENCE FROM
PETITIONER?
[Id. at 8]

SHOULD TRIAL COUNSEL BE RENDERED [sic] TO HAVE PROVIDED
INEFFECTIVE ASSISTANCE FOR FAILING TO CALL A KNOWN
WITNESS THAT COULD HAVE CHANGED THE OUTCOME OF THE
TRIAL?
[Id. at 10]

The Court finds that the first and second issue are procedurally

defaulted: the first, because he failed to raise it in his Rule

1925(b) statement on direct appeal; the second, because he did

not present this issue as one of federal law to the state courts

but only as an issue of state law.  In addition, Petitioner has

failed to show that the state courts' adjudication of his claims

constituted an unreasonable application of Supreme Court

precedent.  Hence, the habeas petition should be denied.

## A.  Factual and Procedural History

The facts underlying the conviction was summarized by the

PCRA Court as follows:

On June 26, 1993, the victim, Carl Bracey, and his
fiancé,[sic] Nellie Dreher, were inside the apartment
of Monica Dreher, which is located on the second floor,
Building #1, of the Blair Heights Housing Project in
the City of Clairton, Allegheny County.  Also in the
apartment at the time were Defendants Richard Kelly and
Edward Domes, as well as family members and friends of
Nellie Dreher.  Carl Bracey entered the apartment after
the Defendants and after his arrival, an argument
ensued between himself and Defendant Domes.  Bracey and
his fiancé [sic] then exited the apartment at which
point Defendants Domes and Kelly followed them.
Thereafter, a physical fight erupted between Bracey and
Defendant Domes.  Bracey was on top of Defendant Domes

2

> when Defendant Kelly pulled out a gun and pointed it at
> Bracey's neck.  Bracey then removed himself from his
> position on top of Defendant Domes, and with his hands
> raised, he asked, "What are you going to do, shoot me?"
> As Bracey proceeded to run from the scene, both
> Defendants raised their guns and fired them at Bracey.
> It was determined that Bracey had been shot three (3)
> times in the back of his head, which resulted in his
> death.  The Defendant and Mr. Kelly fled the scene.

Doc. 7, Ex. 8 at 3-4.  It appears that Petitioner and his co-

defendant, Kelly, were brothers.  Petitioner had been tried and

convicted of first degree murder for this same incident in

September 1994.  However, on appeal, the Superior Court vacated

the conviction and remanded for a new trial, having concluded

that a jury instruction was erroneous and required a new trial.

In May 1991, Petitioner's second trial commenced.  At this second

trial the Commonwealth, as it had done in the first trial,

presented the testimony of Bracey's fianceé who was an eyewitness

to the entire incident and who testified to the above facts

recounted by the PCRA Court and who specifically identified

Petitioner and Kelly as the shooters.

   Petitioner and his co-defendant Kelly were tried together.

Petitioner was again convicted at this second trial of first

degree murder.[1]  During this second trial, Petitioner was

represented by Jon Pushinsky.  At the post-sentencing motions

---

[1]   Petitioner's co-defendant was also convicted of first
degree murder.  Kelly v. Wakefield, No. 05-584 (W.D. Pa. Kelly's
federal habeas proceedings).  His petition was likewise denied.
Kelly has apparently sought a Certificate of appealability from
the Appeals Court.  Kelly v. Wakefield, No. 05-4804 (3d Cir.).

stage and on direct appeal, Petitioner was represented by
Attorney Narvin.  See State Court Record ("SCR"), No. 38.
Attorney Narvin filed a Rule 1925(b) statement of matters
complained of on appeal.  SCR No. 44.[2]  The state trial court

---

[2]  In that Rule 1925(b) statement, the following issues were
raised:

1.  The evidence that the Commonwealth introduced at
trial is insufficient to convict the defendant of first
degree murder . . .

2.  The verdict rendered by the jury, that of first
degree murder is against the weight of the evidence.

3.  The trial court erred in denying the defendant's
challenge to the Commonwealth's use of a pre-emptory
strike to remove an African American juror from the
panel. . . .

4.  The trial court erred in allowing the testimony of
Tiffany Dreher over the objection of defense counsel
relevant to statements of the defendant. . . .

5.  The Court erred when it refused to allow a defense
witness to testify with regard to the defendant's
intoxification. . . . Further, it was error for the
Court to refuse a charge on involuntary intoxification
at that point, or in the alternative, it was
ineffectiveness of trial counsel for failing to request
the charge prior to the court's instruction.

6.  The trial court erred when it denied appellate
counsel's motion to reveal the contents of certain
communications from the jury to the Court relevant to
the deliberations. . . .

7.  Trial counsel was ineffective when, in his closing
argument he admitted that the killing was unlawful and
therefore defeating the applicability of a jury charge
for justification. . . .

8.  Trial counsel was ineffective when he failed to
object to the accomplice charge in that the facts

filed its opinion rejecting Petitioner's arguments.  Doc. 7, Ex.

1.  Attorney Richard Narvin then filed an appeal in the Superior

Court.[3]  The Superior Court affirmed the conviction.  Doc. 7, Ex.

3.  Attorney Narvin then filed a petition for allowance of appeal

("PAA") in the Pennsylvania Supreme Court.  Doc. 7, Ex. 4.[4]  The

---

proved at trial did not indicate that Kelly and Domes
were acting together when any shots were fired.

SCR, No. 44.

[3]  In that appeal brief, the following issues were raised:

1.  Was the evidence insufficient to support the
verdict of guilt for first degree murder?

2.  Was the verdict against the weight of the evidence?

3.  Did the trial court err in denying the defendant's
challenge to the Commonwealth's use of a pre-emptory
strike to remove an African American juror from the
panel?

4.  Did the trial court err when it refused to allow a
defense witness to testify regarding the defendant's
intoxication, and refusing to give a jury instruction
regarding the same?

5.  Were defendant's constitutional rights violated
when counsel rejected outright, and failed to inform
defendant of, a plea agreement offered by the
Commonwealth?

6.  Did the trial court err in giving an accomplice
charge and was trial counsel ineffective when he failed
to object to that charge in that the facts proved at
trial did not indicate that appellant and Kelly were
acting together when shots were fired?

See Doc. 7, ex. 2 at 3.

[4]  The only two issues raised in the PAA were as follows:

Pennsylvania Supreme Court denied the PAA.  Doc. 7, Ex. 5.

Petitioner then filed a counseled PCRA petition through Attorney William Kaczynski, who was privately retained.  Doc. 7, Ex. 6.[5]

---

I.  DID SUPERIOR COURT ERR WHEN IT FOUND AN ISSUE TO BE WAIVED ON APPEAL WHEN APPELLATE COUNSEL COULD NOT HAVE INCLUDED IT IN A STATEMENT PURSUANT TO PA. R.A.P. 1925(B) BECAUSE HE DID NOT KNOW ABOUT THE ISSUE?

II.  DID THE SUPERIOR COURT ERR WHEN IT FOUND THE EVIDENCE TO BE SUFFICIENT TO CONVICT THE PETITIONER OF FIRST-DEGREE MURDER?

Doc. 7, Ex. 4 at 4.

[5]  The PCRA petition raised the following issues:

A.  Trial counsel was ineffective for failing to communicate a guilty plea offer made by the prosecutor to the Petitioner's and CoDefendant's trial counsel, and for rejecting said offer outright without conferring with Mr. Domes.  The plea bargain, which Petitioner learned about only after the trial consisted of a guilty plea to a reduced charge of from 17 ½ to 35 years imprisonment.  The plea bargain was conditioned upon a like plea by Mr. Domes' CoDefendant, who also would have accepted the plea bargain if presented with the offer.

. . . .

Finally, prior appellate counsel was ineffective in failing to properly raise, present and preserve this meritorious issue, having failed to raise it in his Rule 1925(b) statement of Matters or in a Petition for Remand with accompanying affidavits.

B.  Trial counsel was ineffective for failing to effectively cross-examine and impeach prosecution witness Nellie Dreher with a critical prior inconsistent statement given under oath at the coroner's inquest in this case.

. . . .

Prior appellate counsel was likewise ineffective in failing to recognize, identify, pursue and preserve this issue.

. . . .

Finally, defense counsel was ineffective in failing to investigate, obtain and use this important evidence at trial. . . .

C.  Trial counsel was ineffective in failing to seek a jury instruction that prosecution witness Nellie Dreher's testimony should have been subject to special scrutiny, given the fact that she had admitted to using marijuana and alcohol at a party at the time of her perception of the events.

. . . .

D.  Trial counsel was ineffective in making unauthorized, unnecessary and unwarranted concessions of guilt during his closing argument. . . . These concessions seriously undercut the Petitioner's defense and relieved the prosecution of its unshifting burden of proof beyond a reasonable doubt, and denied Petitioner his constitutional rights to effective counsel, fair trial and due process.

E.  Trial counsel was ineffective in failing to file a pretrial or subsequent motion to dismiss based upon violations of the double jeopardy clauses of the federal and state constitutions.

F.  Trial counsel was ineffective for failing to obtain a copy of the communication forwarded by Juror Number 8 to the Court, and for failing to appeal and otherwise preserve for judicial review the error of the Trial Court's denial of counsel's and Petitioner's review and access to said communication.  Mr. Domes repeatedly requested trial counsel to obtain a copy and said counsel failed to do so. . . . .

G.  Trial counsel was ineffective in failing to request a jury instruction regarding "false in one,

7

The PCRA Court issued a notice of intent to dismiss the PCRA petition.  SCR No. 50.  In response, Attorney Kaczynski filed a response to the notice objecting to the intended dismissal and adding one other issue to the PCRA petition, noting that Petitioner had intended to file an amended PCRA petition with the added issue.  SCR No. 51.[6]  The PCRA Court dismissed the PCRA petition.  Doc. 7, Ex. 7.  Petitioner then filed a pro se notice of appeal, and a motion for appointment of counsel.  SCR No. 54. Attorney Michael Mellet was appointed to represent Petitioner to file a Rule 1925(b) statement and to prosecute an appeal to the

---

false in all." . . . This instruction was crucial to the defense in connection with the testimony of prosecution witnesses Nellie Dreher and Alita Dreher, and counsel had no reasonable basis for failing to seek such an instruction.  Particularly is this so where, as here, it was clear from Ms. Dreher's prior inconsistent statement made under oath that her claim to have actually witnessed the shootings was wilfully and patently false. . . .

H.  Appellate counsel was ineffective in failing to properly investigate the case, in overlooking and waiving the foregoing claims, and in otherwise failing to properly identify, recognize, assert and preserve any of the foregoing claims, all without properly investigating the case or adequately discussing the case with the Petitioner. . . . .

Doc. 7, Ex. 6.

[6]  The additional issue was as follows:

Trial counsel was ineffective in failing to subpoena and otherwise obtain and secure the highly exculpatory testimony of eyewitness Clifford Nash. . . .

Superior Court.  SCR No. 58.  Attorney Mellett filed a Rule

1925(b) statement.  SCR No. 60 at p. 1-2.[7]  The PCRA court issued

---

[7]  In that 1925(b) statement, Attorney Mellett raised the following issues:

A.  Trial counsel's ineffectiveness in failing to communicate a plea bargain to the defendant and all prior counsel's [sic] ineffectiveness in failing to properly plead, or otherwise preserve the issue for appellate review.

B.  Trial counsel's ineffectiveness in failing to properly cross examine a prosecution witness, Nellie Dreher, including, but not limited to, counsel's failure to impeach the witness with a prior inconsistent statement given under oath at the coroner's inquest in the instant matter and all prior counsel's [sic] ineffectiveness in failing to properly plead, or otherwise preserve the issue for appellate review.

C.  Trial counsel's ineffectiveness in failing to seek a jury instruction that Ms. Dreher's testimony should be subject to special scrutiny (Kloiber charge) and all prior counsel's [sic] ineffectiveness in failing to properly plead, or otherwise preserve the issue for appellate review.

D.  Trial Counsel's ineffectiveness in making unauthorized, unnecessary and unwarranted concessions of guilt during his closing argument and all prior counsel's [sic] ineffectiveness in failing to properly plead, or otherwise preserve the issue for appellate review.

E.  Trial counsel's ineffectiveness in failing to move this Honorable Court to dismiss the instant charges based upon violations of the double jeopardy clauses of the state and federal constitutions due to prosecutorial misconduct, and all prior counsel's [sic] ineffectiveness in failing to properly plead, or otherwise preserve the issue for appellate review.

F.  Trial counsel's ineffectiveness in failing to object to the propriety of a jury instruction pursuant

its opinion explaining why Petitioner did not merit relief.  Doc.

7, Ex. 8.  Petitioner then filed his appellate brief in the

Superior Court through Attorney Mellett.  Doc. 7, Ex. 9.[8]  The

---

to 18 Pa.C.S.A. 6104 which created an impermissible
mandatory presumption of guilt in the instant matter.
The defendant respectfully submits that this Honorable
Court erred in issuing the instruction.  All prior
counsel were ineffective in failing to properly plead,
or otherwise preserve the issue for appellate review.

G.  Trial counsel's ineffectiveness in failing to
obtain a copy of a communication forwarded by juror No.
8 and all prior counsel's [sic] ineffectiveness in
failing to properly plead, or otherwise preserve the
issue for appellate review.

H.  Trial counsel's ineffectiveness in failing to
request a "false in one, false in all" jury instruction
and all prior counsel's [sic] ineffectiveness in
failing to properly plead, or otherwise preserve the
issue for appellate review.

I.  Trial counsel's ineffectiveness in failing to
present the testimony of an eyewitness, Clifford Nash,
and all prior counsel's [sic] ineffectiveness in
failing to properly plead, or otherwise preserve the
issue for appellate review.

SCR No. 60.

[8]  The following issues were raised in the appellate brief:

I.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
FAILING TO COMMUNICATE A PLEA BARGAIN TO THE DEFENDANT
AND ALL PRIOR COUNSEL'S [sic] INEFFECTIVENESS IN
FAILING TO PROPERLY PLEAD, OR OTHERWISE PRESERVE THE
ISSUE FOR APPELLATE REVIEW?

II.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
FAILING TO PROPERLY CROSS EXAMINE A PROSECUTION

10

WITNESS, NELLIE DREHER, INCLUDING, BUT NOT LIMITED TO,
COUNSEL'S FAILURE TO IMPEACH THE WITNESS WITH A PRIOR
INCONSISTENT STATEMENT GIVEN UNDER OATH AT THE
CORONER'S INQUEST IN THE INSTANT MATTER AND ALL PRIOR
COUNSEL'S [sic] INEFFECTIVENESS IN FAILING TO PROPERLY
PLEAD, OR OTHERWISE PRESERVE THE ISSUE FOR APPELLATE
REVIEW?

III.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
FAILING TO SEEK A JURY INSTRUCTION THAT MS. DREHER'S
TESTIMONY SHOULD BE SUBJECT TO SPECIAL SCRUTINY
(KLOIBER CHARGE) AND ALL PRIOR COUNSEL'S [sic]
INEFFECTIVENESS IN FAILING TO PROPERLY PLEAD, OR
OTHERWISE PRESERVE THE ISSUE FOR APPELLATE REVIEW?

IV.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
MAKING UNAUTHORIZED, UNNECESSARY AND UNWARRANTED
CONCESSIONS OF GUILT DURING HIS CLOSING ARGUMENT AND
ALL PRIOR COUNSEL'S [sic] INEFFECTIVENESS IN FAILING TO
PROPERLY PLEAD, OR OTHERWISE PRESERVE THE ISSUE FOR
APPELLATE REVIEW?

V.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
FAILING TO MOVE THE TRIAL COURT TO DISMISS THE INSTANT
CHARGES BASED UPON VIOLATIONS OF THE DOUBLE JEOPARDY
CLAUSES OF THE STATE AND FEDERAL CONSTITUTIONS DUE TO
PROSECUTORIAL MISCONDUCT, AND ALL PRIOR COUNSEL'S [sic]
INEFFECTIVENESS IN FAILING TO PROPERLY PLEAD, OR
OTHERWISE PRESERVE THE ISSUE FOR APPELLATE REVIEW?

VI.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE
MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN
FAILING TO REQUEST A "FALSE IN ONE, FALSE IN ALL" JURY
INSTRUCTION AND ALL PRIOR COUNSEL'S [sic]
INEFFECTIVENESS IN FAILING TO PROPERLY PLEAD, OR
OTHERWISE PRESERVE THIS ISSUE FOR APPELLATE REVIEW.

VII.  DID THE TRIAL COURT ERR IN NOT IN NOT [sic]
GRANTING THE DEFENDANT A HEARING AND DENYING ON THE

Superior Court affirmed the denial of PCRA relief, adopting the opinion of the PCRA Court as its own.  Doc. 7, Ex. 10.   Through new counsel, Attorney Scholle, Petitioner filed a PAA in the Pennsylvania Supreme Court on February 5, 2004.  Doc. 7, Ex. 11. The Pennsylvania Supreme Court denied the PAA.  Doc. 7, Ex. 12.

Petitioner then filed the instant federal habeas petition. Doc. 3.  The Respondents filed an answer, in which they claimed, inter alia, Petitioner's claims were procedurally defaulted and/or lacked merit.  Doc. 7.  Petitioner filed a traverse.  Doc. 8.

### B.  Applicable Legal Standards

### 1.  AEDPA is applicable

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) (AEDPA) which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254 was effective April 24, 1996.  Because petitioner's habeas petition was filed in the year 2005, AEDPA is applicable to this case.  Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue

---

MERITS THE ISSUE OF TRIAL COUNSEL'S INEFFECTIVENESS IN FAILING TO PRESENT THE TESTIMONY OF AN EYEWITNESS, CLIFFORD NASH, AND ALL PRIOR COUNSEL'S [sic] INEFFECTIVENESS IN FAILING TO PROPERLY PLEAD, OR OTHERWISE PRESERVE THIS ISSUE FOR APPELLATE REVIEW?

Doc. 7, Ex. 9 at 5-6.

presented to them and disposed of the issue on the merits, and
that issue is also raised in a federal habeas petition, AEDPA
provides the applicable deferential standards by which the
federal habeas court is to review the state courts' disposition
of that issue. <u>See</u> 28 U.S.C.§ 2254(d) and (e).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme
Court has expounded upon the standard found in 28 U.S.C. §
2254(d). In <u>Williams</u>, the Court explained that Congress intended
that habeas relief for errors of law may only be granted in two
situations: 1) where the state court decision was "contrary to .
. . clearly established Federal law, as determined by the Supreme
Court of the United States" or 2) where that state court decision
"involved an unreasonable application of[] clearly established
Federal law as determined by the Supreme Court of the United
States." <u>Id</u>. at 404-05 (emphasis deleted). The Court explained
the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a
> conclusion opposite to that reached by this Court on a
> question of law or if the state court decides a case
> differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct
> governing legal principle from this Court's decisions
> but unreasonably applies that principle to the facts of
> the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13. The Court of Appeals for the Third
Circuit has also elucidated the "contrary to" clause by noting

13

that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." Werts v. Vaughn, 228 F.3d at 197 (quoting Matteo v. Superintendent, SCI-Albion, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)).  Moreover, it is Petitioner's burden to prove the state court decision is either contrary to, or an unreasonable application of, clearly established federal law.  See Matteo, 171 F.3d at 888; Werts v. Vaughn, 228 F.3d at 197.  Under the "contrary to" clause, the relevant universe of analysis is restricted to the holdings of United States Supreme Court cases as they existed at the time of the state court decision. Williams, 529 U.S. at 412.  In contrast, under the "unreasonable application" clause, federal habeas courts may consider lower federal court cases in determining whether the state court's application of Supreme Court precedent was objectively unreasonable.  Matteo, 171 F.3d at 890.[9]

### 2.   Standard for Ineffective Assistance of Counsel

---

[9]   AEDPA also permits federal habeas relief where the state court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).  It does not appear that Petitioner properly casts his arguments in terms of an unreasonable determination of the facts.  However, where he does below, the court concludes that none of the challenged factual determinations of the state courts are unreasonable.

In Strickland v. Washington, 466 U.S. 668 (1984), the
Supreme Court explained that there are two components to
demonstrating a violation of the right to effective assistance of
counsel.  First, the defendant must show that counsel's
performance was deficient.  This requires showing that "counsel's
representation fell below an objective standard of
reasonableness." Id. at 688; see also Williams v. Taylor, 529
U.S. at 390-91.  In reviewing counsel's actions, the court
presumes that counsel was effective.  Woods v. McBride, 430 F.3d
813, 821 (7th Cir. 2005)("We view counsel's performance
deferentially, with the understanding that there is a great deal
of room for disagreement among reasonable attorneys as to the
appropriate strategy or tactics to employ in the course of
representation, so we indulge the 'strong presumption that
counsel rendered reasonably effective assistance.'")

Because the Strickland test is one of objective
reasonableness, it does not matter if counsel actually considered
the course taken or foregone to determine whether the actions or
omissions were objectively reasonable so long as a hypothetical
reasonable attorney could have done the same, there is no
ineffectiveness.  Chandler v. United States, 218 F.3d 1305, 1316
n.16 (11th Cir. 2000).  In light of the strong presumption of
counsel's effectiveness and the objective reasonableness
standard, the Court of Appeals for the Third Circuit has

15

explained, "[i]t is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466

U.S. at 687; <u>Dooley v. Petsock</u>, 816 F.2d 885, 889 (3d Cir. 1987).
As a result, if a petitioner fails on either prong, he loses.
<u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000); <u>Foster</u>
<u>v. Ward</u>, 182 F.3d 1177, 1184 (10th Cir. 1999).

Many of the issues Petitioner raises in this habeas petition
are issues of ineffectiveness of counsel or are issues that are
now only properly cognizable as ineffective assistance claims.
Most of these ineffective assistance of counsel claims were
addressed on the merits by the state courts.  In disposing of
these ineffective assistance claims, the state courts relied upon
the test announced in <u>Commonwealth v. Pierce</u>, 527 A.2d 973 (Pa.
1987).  Doc. 7 Ex. 8 at 4-5. (PCRA Court opinion).[10]  The
Pennsylvania Supreme Court has developed an ineffective
assistance standard that requires a petitioner to demonstrate
that (1) the underlying claim is of arguable merit, (2) counsel
had no reasonable basis for the act or omission in question, and
(3) but for counsel's act or omission, the outcome of the
proceedings would have been different.  <u>Commonwealth v. Pierce</u>,
527 A.2d at 975.  <u>See also Commonwealth v. Douglas</u>, 645 A.2d 226,
230-31 (Pa. 1994).  This standard has been found to be materially
identical to the test enunciated in <u>Strickland</u>.  <u>See Werts</u>, 228

---

[10] The PCRA Court opinion cited to <u>Commonwealth v. Fletcher</u>,
750 A.2d 261, 273 (Pa. 2002) which in turn, cited to <u>Commonwealth</u>
<u>v. Kimball</u>, 724 A.2d 326 (Pa. 1999), which in turn cited to
<u>Commonwealth v. Pierce</u>.

F.3d at 203.  The Third Circuit Court has ruled that this standard is not "contrary to" <u>Strickland</u>, in the first sense of contrary to, i.e., applying a wrong rule of law,[11] and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of <u>Strickland</u> to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under <u>Strickland</u>."  <u>Werts</u>, 228 F.3d at 204.  Because the state courts decided Petitioner's claims of ineffective assistance of counsel under the standards of <u>Pierce</u> and those standards are the same as the <u>Strickland</u> standard, this Court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary (in the second sense) to United States Supreme Court precedents or an unreasonable application of those precedents.

### 3.  Procedural Default Doctrine

The doctrine of procedural default essentially provides that if a federal habeas petitioner has either failed to present a

---

[11]  Of course, it would remain open to Petitioner to show that the State Courts' adjudication of his claim was contrary to United States Supreme Court precedent in the second sense of "contrary to," i.e., demonstrating the existence of a Supreme Court case that was factually indistinguishable from the State Court case, yet the State Court decided it differently from the Supreme Court. Petitioner has not done so in this case however.

federal claim in the state courts or failed to comply with a
state procedural rule and such failure to present or to comply
would provide a basis for the state courts to decline to address
the federal claim on the merits, then such federal claims may not
be addressed by the federal habeas court.  <u>See</u>, <u>e.g.</u>, <u>Wainwright
v. Sykes</u>, 433 U.S. 72 (1977) (failure to object at trial
constituted waiver of issue under state law and hence, a
procedural default under federal habeas law); <u>Francis v.
Henderson</u>, 425 U.S. 536 (1976) (failure to comply with state
procedure requiring challenges to composition of grand jury be
made before trial constituted state waiver and, therefore, also
constituted procedural default for purposes of federal habeas);
<u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 848-49 (1999) (failure to
raise issue in discretionary appeal to state supreme court
constituted a procedural default for habeas purposes).

Procedural default will not be found based upon the failure
to comply with the state procedural rule unless the state
procedural rule is "adequate" and  "independent."  <u>Coleman v.
Thompson</u>, 501 U.S. 722, 750 (1991).  A state rule of procedure is
"adequate" if it is firmly established and applied with some
consistency at the time the alleged default occurs in the state
court proceedings.  <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir.
1996) ("A state rule is adequate only if it is 'consistently and
regularly applied.' *Johnson v. Mississippi*, 486 U.S. 578, 587

19

(1988); *see also Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural rule must be 'firmly established and regularly followed' to bar federal habeas review)."). A state rule of procedure is "independent" if it does not depend for its resolution on answering any federal constitutional question. <u>Ake v. Oklahoma</u>, 470 U.S. 68, 75 (1985) ("when resolution of the state procedural law question depends on a federal constitutional ruling, the state-law prong of the court's holding is not independent of federal law . . . .").

There are two exceptions to the procedural default doctrine. First, an issue that was not properly raised in the state courts and therefore procedurally defaulted may nonetheless be addressed by a federal habeas court if the petitioner shows cause for, and actual prejudice stemming from, the procedural default. <u>Wainwright v. Sykes</u>. In order "[t]o show cause, a petitioner must prove 'that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.' *Murray v. Carrier*, 477 U.S. 478, 488 (1986)." <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 675 (3d Cir. 1996). In order to show actual prejudice, "the habeas petitioner must prove not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage . . . . This standard essentially requires the petitioner to show he was denied 'fundamental fairness[.]'" <u>Werts v. Vaughn</u>, 228 F.3d at 193 (citations and some internal quotations omitted). A

second exception permits a federal court to address the merits of a procedurally defaulted claim where the petitioner can establish a "miscarriage of justice."  The phrase "miscarriage of justice" has been explained by the Supreme Court to require a showing that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995); <u>United States v. Sorrells</u>, 145 F.3d 744, 749 n.3 (5th Cir. 1998)("The 'actually innocent' standard is the same as the 'fundamental miscarriage of justice' standard, which applies 'when a constitutional violation probably has caused the conviction of one innocent of the crime.'").  Moreover, "actually innocent" means factual innocence and not just legal innocence.  <u>See</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998)("[T]he miscarriage of justice exception is concerned with actual as compared to legal innocence.").

In order to make a showing of "actual innocence" a petitioner "must satisfy a two-part test in order to obtain review of otherwise procedurally barred claims.  First, the petitioner's allegations of constitutional error must be supported with new reliable evidence not available at trial.  *Schlup*, 513 U.S. at 327-28. Second, the petitioner must establish 'that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.' *Id*. at 327."  <u>Amrine v. Bowersox</u>, 238 F.3d 1023, 1029 (8th Cir. 2001).  It is

not enough that in light of the new evidence a reasonable doubt may exist as to the Petitioner's guilt, the test is even more onerous than that.  In Schlup, the Supreme Court reiterated that "[t]he meaning of actual innocence as formulated by *Sawyer* and *Carrier* does not merely require a showing that a reasonable doubt exists in the light of the new evidence, but rather that no reasonable juror would have found the defendant guilty." Schlup, 513 U.S. at 329.

Even if a respondent in a federal habeas proceeding fails to raise the issue of procedural default, the court may do so sua sponte.  Yeatts v. Angelone, 166 F.3d 255, 261-62 (4th Cir. 1999). Moreover, a federal habeas court may decide that a habeas petitioner has procedurally defaulted a claim even though no state court has previously decided that the claim was procedurally barred under state law.  See, e.g., Carter v. Vaughn, 62 F.3d 591, 595 (3d Cir. 1995)(requiring the federal district court to determine whether the petitioner's failure to appeal in the state court constituted a waiver under state procedural law that barred state courts from considering the merits and, therefore, constituted a procedural default for habeas purposes even though no state court had made a determination that petitioner's failure to appeal constituted waiver under state law); Chambers v. Thompson,  150 F.3d 1324, 1327  (11th Cir. 1998);  Thomas v. Greiner, 111 F.Supp.2d 271, 277-78 (S.D.N.Y. 2000).

Lastly, if a petitioner has committed a procedural default and has not shown either cause and prejudice or a miscarriage of justice, the proper disposition is to dismiss the habeas petition with prejudice.  See, e.g., Wainwright v. Sykes;  McNary v. Farley, 16 F.3d 1225 (Table), 1994 WL 59278, **3 (7th Cir. 1994); Thompson v. Champion, 996 F.2d 311 (Table),  1993 WL 170924, *3 (10th Cir. 1993).

**C. Discussion**

**1.  Should a Federal Evidentiary hearing be held**

Petitioner raises his first issue as whether a federal evidentiary hearing should be held on the question of whether his trial counsel was ineffective for failing to inform Petitioner of an alleged pre-trial offer for a plea of third degree murder. Liberally construing this claim due to Petitioner's pro se status, the Court understands Petitioner to be raising two claims.  The first issue is whether his trial counsel was ineffective for allegedly failing to communicate this supposed plea offer to him and second, whether a federal evidentiary hearing is required to adjudicate this claim. The Court will address first the issue of whether his trial counsel was ineffective for failing to communicate this alleged plea offer.

Respondents argue in their answer that the issue of trial counsel's ineffectiveness for failing to tell Petitioner about an alleged plea offer is procedurally defaulted.  Doc. 7 at 14-15.

This Court agrees.

The Superior Court ruled on December 13, 2000 that this issue was procedurally defaulted because it was not raised in the Rule 1925(b) statement filed by Attorney Narvin.  Doc. 7, Ex. 3 at 12. ("However, since this claim was not included in the Rule 1925(b) Statement of Matters Complained Of On Appeal filed by appellant, and was not addressed by the trial court in its opinion, it is waived.").   Although new counsel was appointed for post trial proceedings, in the person of Attorney Narvin, he failed to raise the ineffective assistance of trial counsel in this regard in the Rule 1925(b) statement.  The consistent rule in Pennsylvania at the time Attorney Narvin filed the Rule 1925(b) statement was that an issue of ineffective assistance of counsel must be raised at the very first stage when that allegedly ineffective counsel is no longer representing the party or the issue of that counsel's ineffectiveness is waived. Commonwealth v. Green, 709 A.2d 382, 384 (Pa. 1998)("It is well-established that a claim of ineffectiveness must be raised at the earliest possible stage in the proceedings at which counsel whose effectiveness is questioned no longer represents the defendant."); Commonwealth v. Laird, 726 A.2d 346, 354 (Pa. 1999) ("As claims of ineffectiveness of prior counsel must be raised at the first opportunity when that counsel no longer represents the petitioner [and here that did not happen], the

24

issue has been waived.") Commonwealth v. Kenney, 732 A.2d 1161,
1164 (Pa. 1999); Commonwealth v. Hubbard, 372 A.2d 687, 695 n. 6.
(Pa. 1977).[12]  The Superior Court found that because Attorney
Narvin failed to do so, the claim was waived, citing in support
Commonwealth v. Lord, 719 A.2d 306 (Pa. 1998).  Doc. 7, Ex. 3 at
12.

    The rule that an issue is waived if it is not raised in the
Rule 1925(b) Statement had been definitively established, at the
latest in October 1998, in Commonwealth v. Lord, 719 A.2d 306,
308 (Pa. 1998).  The rule has been consistently applied since
then and also at the time of Petitioner's waiver which was in
November 1999 when the Rule 1925(b) statement was filed by
Attorney Narvin.  See, e.g., Commonwealth v. Johnson, 771 A.2d
751 (Pa. 2001); Riley v. Foley, 783 A.2d 807, 813 n. 6 (Pa.
Super. 2001) (finding waiver in child support case for failure to
include issue in Rule 1925(b) statement); Commonwealth v. Touw,
781 A.2d 1250, 1255 (Pa. Super. 2001); Commonwealth v. Thompson,
778 A.2d 1215, 1222 n.5 (Pa. Super. 2001); McKeeman v.
Corestates Bank, N.A., 751 A.2d 655, 658 (Pa. Super. 2000)

---

    [12]  This rule was not abrogated by Commonwealth v. Grant,
813 A.2d 726 (Pa. 2002) until December 31, 2002, long after the
procedural default occurred herein, i.e., November 1999 and long
after the Superior Court held it to have been waived, i.e.,
December 13, 2000.  See Doctor v. Walters, (procedural default is
measured as of the time of the alleged default, not later when a
Court finds such procedural default).  Grant held that
ineffective assistance claims should be deferred until PCRA
proceedings.

(holding that failure to include an issue in a Rule 1925(b) statement waives that issue for purposes of appellate review). Hence, this rule of waiver is adequate and, because it does not depend on answering any federal law question, it is also independent.

In the face of the Respondents' pointing out that Petitioner has procedurally defaulted this claim, Petitioner has not even argued any cause or prejudice, as is his burden.  The only argument Petitioner raised in response to the Respondents' invocation of the procedural default doctrine is as follows:

> 8.  The commonwealth next attempts to create a theory claiming that issue one (1) should be barred review as procedurally defaulted.  They contend that the superior court decision (which affirmed the trial court. . .) was an independent state ground barring federal review.  Com. A. Pg. 14-16.. [sic]
> 9.  Petitioner would note that the commonwealth cites not [sic] case law to support this theory, and this court should disregard this contention as it finds no support.

Doc. 8 at 2.  Petitioner's failure to even argue cause and prejudice or a miscarriage of justice is all the more glaring when the Court considers that the Respondents set forth in their answer a good summary of the procedural default doctrine, specifically noting that it is the habeas petitioner's burden to prove cause and prejudice or a miscarriage of justice.  Not only has Petitioner failed to argue the existence of cause and prejudice, Petitioner has also failed to argue a miscarriage of justice as is his burden.  Nor on this record, in light of the

26

strong evidence of his guilt, could he establish such a
miscarriage of justice.  Having procedurally defaulted this
claim, the Court is barred from considering it on the merits.

In light of this, there is no need to hold a federal
evidentiary hearing on this issue.  See, e.g., Hill v. Jones, 81
F.3d 1015, 1023 (11th Cir. 1996)("A state habeas petitioner is not
entitled to an evidentiary hearing in federal court on the merits
of a procedurally defaulted claim unless he can first overcome
the procedural bar."); Payne v. Smith, 207 F.Supp.2d 627, 642
(E.D. Mich. 2002)("this Court concludes that an evidentiary
hearing is not necessary because Petitioner's habeas claims are
either barred by procedural default or lack merit.").

## 2.    Denial of Expert Witness on Intoxification

Petitioner next complains that he was denied due process
when the trial court refused to permit a toxicologist to testify
in support of an involuntary intoxification defense.

The Commonwealth points out that this issue was presented to
the state courts solely as an issue of state law and so was not
"fairly presented" to the state courts as a federal
constitutional question of due process and so is unexhausted.
Furthermore, because Petitioner cannot now go back to state court
and fairly present this claim as a federal constitutional one, he
has procedurally defaulted the claim.

For claims to be "fairly presented" in state court, claims

27

raised in state court must be "substantially equivalent to those
raised in federal court." Doctor v. Walters, 96 F.3d at 678.
Furthermore, not only must the legal theory presented to the
state courts and the federal habeas courts be the same but the
facts presented to the state courts underlying those legal
theories must be the same facts presented to the federal habeas
court. See, e.g., Gibson v. Scheidemantel, 805 F.2d 135, 138
(3d Cir. 1986); Mattis v. Vaughn 128 F.Supp.2d 249, 256-57 (E.D.
Pa. 2001).[13] A federal legal claim is "fairly presented" to state
courts, and so preserved for federal habeas proceedings, when
there is: (a) reliance in the state courts on pertinent federal
cases employing constitutional analysis, (b) reliance on state
cases employing constitutional analysis in like fact situations,
(c) assertion of the claim in terms so particular as to call to
mind a specific right protected by the Constitution, and (d)
allegation of a pattern of facts that is well within the
mainstream of constitutional litigation. McCandless v. Vaughn,

---

[13] The "fairly presented" doctrine also has application in
the context of procedural default. See Nelson v. Washington,
51 F.3d 276 (Table), 1995 WL 156624, at *3 (7th Cir. 1995)("the
fair presentment of federal issues discussed under exhaustion is
also a useful approach for determining if procedural default has
occurred."); United States ex rel. Sullivan v. Fairman, 731 F.2d
450, 453 n.4 (7th Cir. 1984)("Although a number of the cases
cited in this opinion, including Picard v. Connor[, 404 U.S. 270
(1971)] and Anderson v. Harless[, 459 U.S. 4 (1982)], are
exhaustion cases, the analysis dealing with whether a state court
has been fairly apprised of potential constitutional
ramifications of a claimed trial court error is equally
applicable to waiver [i.e., procedural default] cases.").

172 F.3d 255, 261 (3d Cir. 1999).

Petitioner contends that he did "fairly present" this issue as one of federal due process by coming within sections (c) and (d) of the McCandless v. Vaughn test.  Doc. 8 at ¶ 7.  The Court is not convinced.

In both the Rule 1925(b) statement (SCR No. 44, ¶ 5) and in Petitioner's direct appeal brief to the Superior Court (doc. 7, Ex. 2 at 17-19) Petitioner clearly did not assert the claim in terms so particular as to call to mind a specific right protected by the Constitution.  In fact, in the direct appeal brief, Petitioner cited only to the Pennsylvania Rules of Evidence (id. at 17) and argued in terms of the testimony of the toxicologist being relevant (id.) and noting that admission of evidence is addressed to the sound discretion of the trial court which decision cannot be overturned unless the discretion is abused but that such abuse of discretion occurred herein (id. at 18).  Cf. Keller v. Larkins, 251 F.3d 408, 414 (3d Cir. 2001) (references to "fair trial" not sufficient to fairly present federal due process claim).

Nor is the allegation of abuse of discretion for failing to admit certain evidence constitute an "allegation of a pattern of facts that is well within the mainstream of constitutional litigation."  See, e.g., Laird v. Horn, 159 F.Supp.2d 58 (E.D. Pa. 2001)(claim that a state criminal defendant "was improperly

precluded from presenting exculpatory evidence" was not fairly presented as federal due process claim).

Because of the PCRA one year statute of limitations, Petitioner cannot now go to state court and present this federal due process issue.  Accordingly, he has procedurally defaulted this claim.

Petitioner has not even argued that there is either cause and prejudice or a miscarriage of justice.  Indeed there is neither.  The only claim of "cause" he would have now is that his his PCRA counsel were ineffective for failing to raise the trial and direct appeal counsels' failures to raise the federal due process issue.  However, the ineffective assistance of PCRA counsel cannot serve as cause given that there is no federal right to counsel at the PCRA stage. Werts v. Vaughn, 228 F.3d at 189 n.4; Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993) ("Under *Coleman*, ineffective assistance of post-conviction counsel cannot constitute 'cause' because the Sixth Amendment does not entitle a defendant to post-conviction counsel").  Nor, in light of the evidence of his guilt, the eyewitness account of the shooting, and the absence of any new evidence of innocence, can Petitioner show a miscarriage of justice.

Even if the Court were to entertain this issue on the merits, Petitioner would still not be entitled to relief.  If, as Petitioner contends, he presented this issue in state court as

one of fundamental unfairness under the Federal Constitution's due process clause, he has failed to demonstrate that the state courts' adjudication of this claim was contrary to or an unreasonable application of Supreme Court precedent extant at the time of the disposition.  Nor does this Court find that the state courts' adjudication of this claim to have been contrary to or an unreasonable application of Supreme Court precedent.

Petitioner does seek to attack what he couches as the state courts' "factual determination" that there was insufficient evidence presented as to what amount of alcohol Petitioner had consumed during the relevant time period for the toxicologist to make a determination as to what effect it could have had on the petitioner.  Petitioner had wanted to introduce the toxicologist's testimony to hypothesize that someone who drank to such an extent could lose their ability to form the specific intent required for first degree murder.  See, e.g., Doc. 7, Ex. 2 at 17-18.  The state courts essentially found that for the toxicologist's testimony to constitute anything more than speculation, she would have to have known the approximate amount of alcohol Petitioner had consumed and over what time.  The state courts concluded that there was insufficient evidence presented to establish the amount.

To the extent that this determination is correctly characterized as a finding of fact, this state court factual

determination is entitled to a presumption of correctness and a
Petitioner can only rebut it by clear and convincing evidence. 28
U.S.C. § 2254(e)(1).   Here, Petitioner points to only two pieces
of evidence to rebut the state courts' conclusion or finding that
there was insufficient evidence of the amount of alcohol consumed
by Petitioner to permit the testimony of the toxicologist.   The
first piece of evidence Petitioner points to is the testimony of
Ms. Nellie Dreher who testified that she believed Petitioner was
drinking the night of the shooting because he was acting hostile.
She offered no testimony as to the amount.  Doc. 3 at ¶ 28.  This
is insufficient to rebut the presumed correctness of the state
courts' finding of insufficient evidence for the toxicologist to
opine with any certainty as to the effects alcohol would have had
on Petitioner.

     The second piece of evidence is the testimony of Leroy
George who Petitioner concedes "clearly stated that he did not
know the exact amount of alcohol that petitioner consumed the
night in question."  Doc. 3 at ¶ 29.  Hence, Petitioner has not
rebutted the state courts' determination that there was
insufficient evidence of the amount of alcohol he ingested so as
to make the toxicologist's testimony anything more than
speculation.  Accordingly, this issue does not merit relief.

     Nor does this issue merit the grant of a federal evidentiary
hearing, as Petitioner has not met the standards for requiring

that one be held.  See  28 U.S.C. § 2254(e)(2).  Nor is one

necessary to resolve this issue.

### 3. Trial counsel's ineffective for concessions at closing

Petitioner next contends that his trial counsel was

ineffective for making concessions during his closing such as

"the defendants are willing and they are here to accept their

personal responsibility for the consequences of the actions they

set in motion on the evening" of the shooting.  Doc. 3 at ¶ 35.[14]

---

[14]   Petitioner also quotes from the closing as follows:
"Referring to reasonable doubt[,] counsel went on to state: Now I
have already made that decision (i.e., that petitioner was guilty
beyond a reasonable doubt) for you, because I told you that Mr.
Domes and Mr. Kelley are willing to accept responsibility for
their role. . . .".  Doc. 3 at ¶ 35.  The parenthetical remark is
an interpolation by Petitioner that is a mischaracterization of
the statement by counsel and the purported quote is not entirely
accurate.  The accurate quote in context is as follows:

> The second legal concept, though, remains, and
> that is reasonable doubt, because you may not find
> either Defendant guilty of any offense unless the
> evidence that you heard from that chair there, which is
> now empty, convinces you beyond a reasonable doubt that
> the Defendants committed one of the offenses that they
> are charged with.
> Now, I have already made that decision perhaps
> somewhat easier for you, because I have told you that
> Mr. Domes and Mr. Kelly are willing to accept
> responsibility for their role in the events that led to
> Mr. Bracey's death.
> That acceptance of responsibility, however, does
> not mean that we are going to roll over and play dead
> and let the Commonwealth tell you that what occurred
> that night was a first degree murder case, and that you
> should find the Defendants guilty beyond a reasonable
> doubt of first degree murder.
> The evidence does not prove first degree murder.

SCR, Notes of Testimony at p. 777-78.

The Court notes that this precise issue of trial counsel's ineffectiveness for making some concessions in his closing was waived under state law because this issue was not raised in the appellate brief filed in the Superior Court on direct appeal. Hence the only way it would now be cognizable would be as a layered ineffectiveness claim that direct appeal counsel was ineffective for failing to raise this claim of trial counsel's ineffectiveness.   This precise issue of direct appeal counsel's failure to raise trial counsel's ineffectiveness was raised in the PCRA Court.  Doc. 7, Ex. 6 ¶¶ D & H.  The Court will address this issue as if it were properly raised herein.

In the Superior Court's disposing of the PCRA appeal, it adopted the opinion of the PCRA Court as its own.  The PCRA Court had addressed this issue as follows:

> Clearly, defense counsel was urging the jury arrive at a verdict short of first degree murder, which carried a sentence of life without parole.  Counsel attempted to accomplish this goal by arguing the evidence did not support a finding of specific intent and, therefore, the jury should not convict the Defendant of first degree murder.  To support a claim of ineffectiveness, it must be shown that the underlying claim is of arguable merit, the course chosen by trial counsel did not have a reasonable basis to effectuate the interests of the Defendant and that the ineffectiveness prejudiced the Defendant.  Williams Supra. . . . Furthermore, the tactic chosen by defense counsel was carefully planned to obtain the best possible result for the Defendant.

Doc. 7, Ex. 8 at 6.  Petitioner does not argue that the foregoing

---

is contrary to or an unreasonable application of Supreme Court
precedent and, indeed, it is neither.  <u>See</u>, <u>e.g.</u>, <u>Pratt v.
Conway</u>, 151 Fed.Appx. 582, 582 (9th Cir. 2005)("Admitting lesser
crimes when facing overwhelming evidence of guilt and a possible
death penalty was a reasonable strategy to attempt to gain
credibility when contesting the more serious first-degree murder
charges."); <u>Lingar v. Bowersox</u>, 176 F.3d 453, 458 (8th Cir.1999)
(stating that "the decision to concede guilt of the lesser charge
of second-degree murder was a reasonable tactical retreat rather
than a complete surrender"); <u>Underwood v. Clark</u>, 939 F.2d 473
474 (7th Cir. 1991)(concluding that defense counsel's concession
during closing arguments of a lesser included offense was "a
sound tactic when the evidence is indeed overwhelming . . . and
when the count in question is a lesser count, so that there is an
advantage to be gained by winning the confidence of the jury");
<u>McNeal v. Wainwright</u>, 722 F.2d 674, 676 (11th Cir. 1984) (finding
that McNeal's attorney's statements conceding manslaughter during
a murder trial were tactical and strategic and did not constitute
a forced guilty plea).

In light of the foregoing, direct appellate counsel cannot
be deemed ineffective for failing to raise a meritless issue of
trial counsel's alleged ineffectiveness.[15] <u>Werts v. Vaughn</u>, 228

---

[15] Although Petitioner does cite to <u>Bland v. California
Dept. Of Corrections</u>, 20 F.3d 1469, 1479 (9th Cir. 1994), he does
not argue that the State Courts' disposition was contrary to or

35

F.3d at 203 ("counsel cannot be ineffective for failing to raise a meritless claim.").

### 4.  Trial Counsel ineffective for not calling Clifford Nash

Petitioner next contends that trial counsel was ineffective for failing to call Clifford Nash or, if he proved unavailable to have his testimony from the first trial read at the second trial. Petitioner contends that the testimony of Nash could have discredited Nellie Dreher who said that there were three men involved in the shooting incident, Petitioner and his co-defendant and the victim.  Mr. Nash testified that he had seen only two people in the general area of the shooting.   Doc. 3, ¶ 41.

The PCRA court (and by adoption, the Superior Court on appeal) addressed this issue as follows:

> A defendant must establish prejudice by demonstrating that he was denied a fair trial because of the absence of the testimony of the proposed witness.
>     In the present case, the proposed witness testified at the prior trial and, following the testimony, the fact finder found the Petitioner guilty of Murder in the First Degree.  The Petitioner has failed to demonstrate that he was prejudiced. Therefore, Petitioner's claim must fail.

---

an unreasonable application of <u>Bland</u>.  Doc. 3, ¶ 38.  The Court fails to see how <u>Bland</u> requires a contrary outcome or renders the Superior Court's disposition an unreasonable application of Supreme Court precedent.  Even if <u>Bland</u> required an outcome different from that of the state courts', (and it does not by virtue of its factual and legal dissimilarity to the instant case) such would not matter as AEDPA requires, as a condition of relief, that state court decisions be contrary to Supreme Court precedent not Appeal Court precedent.

Doc. 7, Ex. 8 at 9-10.

Petitioner fails to show that this disposition is contrary to or an unreasonable application of Supreme Court precedent, as is his burden.   The only case cited by Petitioner is <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003).  Because of <u>Wiggins</u>' factual and legal dissimilarities, the Court finds that the state courts' adjudication of Petitioner's claim is neither contrary to nor an unreasonable application of Supreme Court precedent.

The <u>Wiggins</u> case was a death penalty case where it was alleged that the trial counsel were ineffective for failing to conduct a further investigation into the defendant's background and for failing to present more mitigation evidence and/or to have a forensic social worker perform a social history on the defendant.  In addition, in the opening statement to the jury, one of the defendant's counsel stated the jurors would hear, among other things, about the defendant's difficult life, but such evidence was never introduced.   The Supreme Court ultimately held that the state courts' disposition finding the trial counsels' failure to investigate further not ineffective was contrary to or an unreasonable application of Supreme Court precedent.   Instantly, Petitioner's trial counsel knew of the existence of Clifford Nash, hence the issue of conducting further investigation, critical in the <u>Wiggins</u> case is not an issue herein.  <u>See Wiggins</u>, 539 U.S. at 533 ("We base our conclusion on

37

the much more limited principle that 'strategic choices made
after less than complete investigation are reasonable' only to
the extent that 'reasonable professional judgments support the
limitations on investigation.'  A decision not to investigate
thus 'must be directly assessed for reasonableness in all the
circumstances.'") (citations omitted).  For this reason, inter
alia, the Court finds <u>Wiggins</u> simply does not render the state
courts' disposition of this ineffectiveness claim in Petitioner's
case contrary to or an unreasonable application of <u>Wiggins</u>.  In
addition, <u>Wiggins</u> was a death penalty case and in death penalty
cases, the United States Supreme "Court has demanded that
factfinding procedures aspire to a heightened standard of
reliability.  This especial concern is a natural consequence of
the knowledge that execution is the most irremediable and
unfathomable of penalties; that death is different." <u>Ford v.
Wainwright</u>, 477 U.S. 399, 411 (1986). <u>See also</u>, <u>Schiro v.
Farley</u>, 510 U.S. 222, 238 (1994)(Blackmun, J., dissenting).
Petitioner was not facing the death penalty.

     **D.   Certificate of Appealability**

A certificate of appealability ("COA"), which is a
prerequisite for allowing an appeal to a Court of Appeals, should
not be issued unless the petitioner "has made a substantial
showing of the denial of a constitutional right."  28 U.S.C. §
2253 (c)(2).  A "substantial showing" requires a habeas

38

petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). <u>See</u> <u>also</u> <u>Walker v. Government of The Virgin Island</u>, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the Court concludes that jurists of reason would not find it debatable whether the petition states a valid claim of the denial of a constitutional right.  Accordingly, a certificate of appealability should be denied.

### III.   <u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report.  Any party opposing the objections shall have seven (7) days from the date of service of the objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.


<u>/s/Lisa Pupo Lenihan</u>
Lisa Pupo Lenihan
U.S. Magistrate Judge

Dated: January 19, 2006

39

```
cc:  The Honorable Gary L. Lancaster
     United States District Judge

     Edward Domes
     CM-8202
     SCI Greensburg
     R.D. 10
     Box 10
     Greensburg, PA 15601

     Rusheen R. Pettit
     Office of the District Attorney
     401 Allegheny County Courthouse
     Pittsburgh, PA 15219
```